UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:19cr135 (JBA) |
| *v.* | March 29, 2021 |
| LUIS NIEVES-FELICIANO | |

**RULING GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE**

Defendant Luis Nieves-Feliciano files this motion for a reduction in sentence requesting that he be able to serve the remainder of his 46-month sentence on home confinement in light of the COVID-19 pandemic, his medical conditions, and the inadequate medical care he has received in Bureau of Prisons (BOP) custody. (Def.'s Mem. [Doc. # 60-1]). The Government opposes release [Doc. # 64], arguing that Mr. Nieves-Feliciano presents a high risk of recidivism. The Court held a hearing on Defendant's motion via Zoom on March 1, 2021.

I.      **Background**

On February 3, 2020, Mr. Nieves-Feliciano was sentenced to 46 months imprisonment after pleading guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C), and unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). (J. [Doc. # 50] at 1.) After his arrest on May 15, 2019, Mr. Nieves-Feliciano was incarcerated at Wyatt Detention Center, later transferred to MDC Brooklyn, and then to FCI Schuylkill on January 28, 2021, where he is currently being held. (Def.'s Mem. in Supp. at 1; FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed Mar. 29, 2021). Mr. Nieves-Feliciano has served 22 months of his sentence, or just

over 60 percent of his expected incarceration, and is scheduled for release to home confinement on August 19, 2022. (Def.'s Mem. at 1.)

Mr. Nieves-Feliciano seeks compassionate release from prison and an order to serve the remainder of his sentence on home confinement. (*Id.*) He maintains that his medical conditions, including obesity, an unspecified circulatory system disorder, and elevated liver enzyme levels, coupled with the inadequate care he has been receiving in BOP custody, create extraordinary and compelling circumstances that justify his release.[1] (*Id.* at 3-5.)

## II.   Legal Standard

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides that

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]

On March 26, 2020, the United States Attorney General urged the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," noting that the health risks

---

[1] Defendant claims that his medical records are inaccurate, with numerous medical conditions documented in his PSR absent from his medical records and several abnormal liver enzyme tests labeled as "normal." (*Id.* at 3, 6.) Mr. Nieves-Feliciano maintains that these abnormal liver enzyme results and the discolored extremities he reported are consistent with liver disease. (*Id.* at 3.) Despite these symptoms and a nurse practitioner's recommendation that Mr. Nieves-Feliciano be referred to a specialist, it is undisputed that Defendant has not been referred to or seen by a specialist.

[2] Incarcerated persons previously could only seek compassionate release upon motion of the Bureau of Prisons (BOP) which the First Step Act of 2018 amended to permit inmates to seek relief directly from the courts upon satisfaction of certain administrative exhaustion requirements.

posed by the pandemic likely constitute the "extraordinary and compelling reasons" required for compassionate release. Att'y Gen. William Barr, *Memorandum from the Attorney General to Direct of Bureau of Prisons* at 1 (Mar. 26, 2020).

In granting authority to the federal courts to decide motions brought under 28 U.S.C. § 3582(c)(1)(A), Congress intended to expand, expedite, and improve the process of sentence reductions under extraordinary and compelling circumstances.[3] *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). In holding that district courts are not constrained by § 1B1.13 Application Note 1(D), which makes the BOP "the sole arbiter of whether most reasons qualify as extraordinary and compelling," the Second Circuit described the discretion of federal district courts to consider a wide range of factors in assessing a motion for a sentence reduction under the First Step Act, including a defendant's "age at the time of [the] crime, . . . the injustice of [a] lengthy sentence," and "the present coronavirus pandemic," *Id.* at 238.[4] Courts therefore may exercise their discretion to determine if the confluence of all the issues raised in defendants' motions for release warrants granting them. *See also United States v. McCoy*, No. 20-6821, 2020 WL 7050097, at *9 (4th Cir. Dec. 2, 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts[,] . . . district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.") (internal quotations omitted); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("[F]ollowing the Second Circuit's lead, [we hold that] where incarcerated persons file motions for compassionate release, federal judges may [] have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir.

---

[3] "Compassionate release is a misnomer" as the modifications to § 3582(c)(1)(A) under the First Step Act "in fact speak[] of sentence reductions." *Brooker*, 976 F.3d at 237.
[4] "[T]he only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation *alone* shall not be considered an extraordinary and compelling reason." *Id.* at 237-38 (emphasis in original) (internal quotations omitted).

Nov. 20, 2020) (agreeing with the Second Circuit that district courts have full discretion to define what constitutes "extraordinary and compelling" circumstances).

### III.   Discussion

The Court must determine whether the Defendant has satisfied the administrative rights exhaustion requirement, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction, and whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

#### a.   Administrative Exhaustion

On August 17, 2020, the Warden of MDC Brooklyn denied Mr. Nieves-Feliciano's request for compassionate release. (Ex. B to Def.'s Mem. [Doc. # 60-3] at 11.) The Government concedes that Defendant has exhausted his administrative remedies. (Gov.'s Mem. in Opp. at 5.)

#### b.   Extraordinary and Compelling Circumstances

Because of his documented obesity, the Government concedes that Mr. Nieves-Feliciano has established an extraordinary and compelling health reason that could make him eligible for release. (*Id.* at 8.)

#### c.   Section 3553(a) Factors

There are several § 3553(a) factors relevant to the analysis of whether the Court should grant Mr. Nieves-Feliciano a sentence reduction including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed to afford adequate deterrence to criminal conduct"; "the need for the sentence imposed to protect the public from further crimes of the defendant"; and "the need for the sentence

imposed to provide the defendant with needed educational or vocational training [or] medical care."[5]

### i. *Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

Mr. Nieves-Feliciano is a 43-year-old male who pleaded guilty to two nonviolent offenses—possession with intent to distribute cocaine and possession of a firearm by a prohibited person—after his arrest for selling drugs out of the liquor store he owned and operated with his wife. (Presentence Investigation Report [Doc. # 35] at 4-6.) This arrest was not Mr. Nieves-Feliciano's first contact with the criminal justice system; since age sixteen, he has been arrested and convicted thirteen times, including the instant offense. (*Id.* at 9-13.) His convictions include second-degree assault, third-degree robbery, assault on a law enforcement officer, and criminal possession of a gun. (*Id.*) However, all of Mr. Nieves-Feliciano's convictions in the last ten years involve nonviolent drug and firearm offenses, with his last violent conviction occurring in 2004. (*Id.*) He has maintained an unblemished disciplinary record during this incarceration. (Def.'s Mem. at 1.) Although Mr. Nieves-Feliciano's conduct seems to be moving in a positive direction in that he has not been convicted of a violent offense in a decade and has received no disciplinary infractions in prison, his lengthy criminal history still weighs against early release. *See United States v. Daley*, --- F. Supp. 3d ---, 2020 WL 7496469, at *1-*2 (D. Mass. Dec. 21, 2020) (finding that the defendant's criminal record spanning more than 33 years and including more than 24 convictions for violent and non-violent offenses weighed against release); *United States v. Whindleton*, 2:13-cr-64-NT, 2020 WL 7265844, at *3 (D. Me. Dec. 10, 2020) (finding that the

---

[5] Factors (a)(3) and (a)(4), which ask the Court to assess the kinds of sentences available and the sentencing range for Defendant's crime or type of crime, are addressed throughout the analysis. Since Defendant's conviction does not have an identified victim and there is no pertinent policy statement, *see Brooker*, 976 F.3d at 235, the Court does not consider factors (a)(5) and (a)(7).

defendant's nine separate criminal convictions which involved violence, weapons, and/or drugs over a period of six years weighed against release).

### ii.   *Just Punishment*

Mr. Nieves-Feliciano argues that his current incarceration of 21 months is just punishment, despite falling short of the Court's imposed sentence, because the pandemic and his inadequate access to medical care has rendered his punishment harsher and more punitive than intended. (*See* Def.'s Mem. at 20-22.) In support of this contention, Defendant cites his numerous written requests to the BOP for medical care, including statements that he is "very concern (sic) for [his] health," "fear[s] for [his] life," and is "pleading for [his] life." (*Id.* at 22.) He testified that as a result of restrictions designed to protect inmates and staff from COVID-19, he has been forced to spend 23 hours a day alone in his prison cell. The Government does not dispute this characterization. *See United States v. Rodriguez*, --- F. Supp. 3d ---, 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) (noting that for inmates with exacerbating health conditions, the threat to inmates' health coupled with the onerous lockdowns and other restrictions in response to the pandemic "have made the incarceration of prisoners far harsher than normal"). *See also United States v. Vence-Small*, 3:18-cr-31 (JAM), 2020 WL 2214226, at *4 (D. Conn. May 7, 2020) ("A just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease."). On this record, the Court therefore finds that this factor weighs in favor of Mr. Nieves'-Feliciano's release to home confinement as his incarceration during the pandemic, particularly as an inmate with comorbidities, has made his sentence harsher than was anticipated or intended.

### iii.   *Deterrence and Public Protection*

The Government argues that releasing Mr. Nieves-Feliciano to home confinement now would undermine the deterrent goals of his sentence by effectively reducing his sentence by nearly half and would place the public at risk of harm given his criminal history. (Gov.'s Mem. at 9.) Mr. Nieves-Feliciano counters that releasing him to home confinement

with electronic location monitoring will continue to punish him and hold him accountable. (Def.'s Mem. at 23.)

Mr. Nieves-Feliciano's criminal history is troubling. Even after serving several separate prison sentences, he continued his criminal activity after release. However, the violence component of his criminal conduct has subsided. Further, home confinement may deter criminal conduct. *See, e.g.*, *United States v. Cantu*, 423 F. Supp. 3d 345, 354-355 (S.D. Tex. 2019); *Woodward v. United States*, 469 F. Supp. 3d 499, 502 (E.D. Va. 2020); *United States v. Smith*, 2021 WL 619673, at *4-*5 (D. Kan. Feb. 17, 2021); *United States v. Moore*, 2020 WL 6262323, at *4 (D. Kan. Oct. 23, 2020); *United States v. King*, 2020 WL 5440324, at *6 (E.D. Mich. Sept. 10, 2020); *United States v. Cannon*, 2020 WL 5887341, at *6 (E.D. Mich. Oct. 5, 2020). Empirical research indicates that home confinement, when used as an alternative to incarceration, "is effective at maintaining public safety and reducing recidivism." Jessica Bouchard & Jennifer S. Wong, *The New Panopticon? Examining the Effect of Home Confinement on Criminal Recidivism*, 13 Victims & Offenders 589, 603 (2017), https://doi.org/10.1080/15564886.2017.1392387.

The Court finds that the deterrence factor is neutral in this case. While Mr. Nieves-Feliciano has not historically been deterred by incarceration, there does not appear to be any significant deterrence advantage to continuing to incarcerate Mr. Nieves-Feliciano instead of placing him on home confinement.

For similar reasons, the Court also concludes that the public safety factor is neutral for Mr. Nieves-Feliciano. Although Mr. Nieves-Feliciano's criminal record suggests a risk of recidivism, the Government does not offer any explanation as to why the public would be at greater risk if Defendant is placed on home confinement with electronic location monitoring. Since Mr. Nieves-Feliciano has maintained a compliant disciplinary record in prison, he is unlikely to offend while serving the remainder of his sentence at home. Although the risk of

recidivism is not non-existent, keeping Mr. Nieves-Feliciano incarcerated while at significant health risk does not appear to reduce that risk.

### iv.  Access to Rehabilitative Services and Medical Care

Mr. Nieves-Feliciano maintains that he will have access to substantially better medical care outside of BOP custody for treatment of his diagnosed and undiagnosed medical conditions. Defendant cites as evidence of inadequate medical treatment the BOP's faulty medical records, its refusal to refer him to a specialist as recommended by a nurse practitioner, and his consistent abnormal laboratory results and other self-reported symptoms like numbness and discoloration of his extremities. He offers his medical records from InterCommunity, the clinic from which he received care prior to his incarceration, which reflect that he had one abnormal liver enzyme reading followed by several normal readings. He maintains that these records demonstrate that InterCommunity provided superior care to the BOP because the BOP has not been able to manage his abnormal liver enzymes as InterCommunity has. Mr. Nieves-Feliciano's release plan states that he intends to seek medical care at InterCommunity. The Government disputes that the BOP is providing inadequate medical care to Defendant, theorizing that Mr. Nieves-Feliciano's medical issues could be related to his obesity or anxiety and that there is no evidence that releasing Defendant will allow him to understand and treat his medical problems.

In *United States v. Williams*, 2020 WL 1751545, at *4 (N.D. Fla. Apr. 1, 2020), Judge Rodgers found that even where a prisoner "received excellent care from the BOP," that his medical conditions weighed in favor of release because "a reduction [in] sentence will enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the real threat that COVID-19 poses in the institutional environment."

Here, while Mr. Nieves-Feliciano's condition might be benign, that does not ameliorate Defendant's mounting concern that the underlying condition could be serious

since he has not been able to obtain an evaluation from any specialist while in BOP custody. Moreover, Defendant's four letters to the Court express fear and anxiety about the state of his health, underscoring that his concerns about his medical challenges are sincerely believed. Releasing Mr. Nieves-Feliciano would permit him to have control over his medical care, including treatment for anxiety. In light of Mr. Nieves-Feliciano's documented comorbidity and unresolved medical issues in the context of the COVID-19 pandemic, the Court finds this factor to weigh in favor of release.

### IV. Conclusion

Mr. Nieves-Feliciano's medical conditions that place him at risk of severe illness from COVID-19, unresolved and untreated medical complaints, clear disciplinary record in prison, having served over 60 percent of his sentence, and the uniquely harsh nature of his present confinement warrant releasing him to home incarceration. The Court therefore GRANTS Defendant's motion for sentence reduction and reduces his sentence to time served. He is to be released to live with his wife, Jessica Medina, in New Britain, Connecticut, and is required to serve the first six months in home incarceration, followed by six months of home detention with electronic location monitoring. Selection of the appropriation technology to be used is left to the U.S. Probation Office. Mr. Nieves-Feliciano shall self-quarantine for 14 days following his release.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March 2021.